IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| CHRISTINE A. CARLSON | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Case No. 3:15-0200 |
| | ) | |
| RELIANCE STANDARD LIFE | ) | |
| INSURANCE COMPANY | ) | |
| Defendant | ) | |

## MEMORANDUM AND ORDER

Pending before the Court is the Motion to Supplement the Administrative Record (THE "Motion to Supplement") (Docket No. 29), filed by Plaintiff Christine Carlson (the "Plaintiff" or "Carlson"). Defendant Reliance Standard Life Insurance Company (the "Defendant" or "Reliance Standard") opposes the Motion to Supplement. *See* Docket Nos. 30 and 33.[1] For the reasons discussed herein, the Motion to Supplement is GRANTED. Within thirty (30) days of the date of this Order, Plaintiff shall supplement the administrative record in this proceeding with (i) the OME Amendment Report and (ii) the final investigative report prepared on behalf of Plaintiff, including witness statements.

## Background

Plaintiff brought suit against Defendant alleging that Defendant failed to pay benefits owing to Plaintiff under a group life insurance policy covering Plaintiff's late husband, Barak Carlson, in violation of the Employer Retirement Income Security Act of 1974 ("ERISA").[2]

---

[1] Plaintiff's Motion to Supplement was not accompanied by a memorandum of law as required by Local Rule 7.01(b). As directed by the Court (Docket No. 31), Plaintiff filed a reply to Defendant's response in opposition to the Motion to Supplement, which set forth Plaintiff's legal arguments and supporting authority (Docket No. 32).

[2] Plaintiff originally sued Defendant in state court alleging violations of the Tennessee Consumer Protection Act. *See* Docket No. 1-1. Defendant removed the state court action to this Court pursuant to 28 U.S.C. § 1331, 29 U.S.C. § 1132(e) and 28 U.S.C. § 1441. *See* Docket No. 1. Plaintiff later amended her

Among other things, Plaintiff alleges that Defendant failed to properly review relevant information and that Defendant's decision-making process did not provide Plaintiff with a full and fair review. *See* Docket No. 12 at 3-4 and ¶¶ 19, 22, 23, 24.

The following facts relevant to the pending Motion to Supplement are undisputed.[3] Decedent Carlson was a participant in the group life insurance plan issued to Camber Corporation, Mr. Carlson's employer. Amended Complaint and Answer at ¶ 5. Mr. Carlson was insured for $250,000 in group life coverage, and was separately insured for $250,000 in accidental risk benefits. Amended Complaint and Answer at ¶ 8 and 9. Plaintiff is the sole beneficiary under the policy insuring the life of Mr. Carlson. Amended Complaint and Answer at ¶ 10.

On October 20, 2012, Mr. Carlson died from a gunshot wound while hunting with a family member. Amended Complaint and Answer at ¶ 11-15. The initial final report by the Metro Nashville Police Department (the "MNPD"), who responded to the scene and the office of the Medical Examiner (the "OME") stated Mr. Carlson's cause of death as suicide. Amended Complaint and Answer at ¶ 16-17.

On March 15, 2013, Plaintiff made a claim for voluntary risk benefits under the group life policy. AR0001 (Docket No. 20 at 1).[4] By letter dated August 8, 2013, Defendant initially denied Plaintiff's claim based on the stated cause of death as suicide. AR105-06 (Docket No. 20-1at 5-

---

complaint to allege violations of ERISA. *See* Docket No. 12. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e) as a civil action founded upon a claim of right arising under the laws of the United States. This Court also has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity between Plaintiff, who is domiciled and is a citizen of New Jersey, and Defendant, which is an Illinois corporation with a main office in Pennsylvania. In addition, the amount in controversy exceeds $75,000. Venue is appropriate here because the qualifying event giving rise to the dispute occurred in Davidson County, Tennessee.

[3] These undisputed facts are taken from Plaintiff's Amended Complaint (the "Amended Complaint") (Docket No. 12) and Defendant's Answer to Amended Complaint (the "Answer") (Docket No. 13). These facts are also relevant to the merits of Plaintiff's claims. They are examined here only for the Court's evaluation of whether Plaintiff has sufficiently demonstrated a colorable claim or claims to satisfy the *Wilkins* exception discussed below.

[4] The Administrative Record is found at Docket Entry No. 20.

6). Plaintiff (through her counsel) timely requested on October 1, 2013, a formal review of the denial, as instructed in the denial letter. AR0109 (Docket No. 20-1 at 9). Plaintiff's requested review asserted that Mr. Carlson's death resulted from an accidental gunshot wound, not a suicide. *Id*. In that same correspondence dated October 1, 2013, Plaintiff advised Defendant that she intended to submit additional information to Defendant following her investigation into the circumstances of Mr. Carlson's death. *Id*. On October 23, 2013, the Appeals Specialist assigned by Defendant to handle Plaintiff's claim requested that Plaintiff submit any additional information by November 23, 2013, after which time the review would "move forward." AR0048 (Docket No. 20 at 48).

On November 21, 2013, Plaintiff requested additional time to submit additional information. AR0141 (Docket No. 20-1 at 41). In response, Defendant allowed Plaintiff until December 13, 2013, to provide any additional information, again stating that after that date, Defendant would "move forward with [its] review." AR0049 (Docket No. 20 at 49). By letter dated December 13, 2013, Plaintiff provided additional information to Defendant, but noted that her investigation was ongoing with an anticipated completion date of "the middle of January 2014." AR0144 (Docket No. 20-1 at 44). Plaintiff's December 13, 2013 correspondence further stated that she would "continue to send information as acquired" with a request that Defendant send notice that it was "keeping this matter in an open status." *Id*. There does not appear to have been a response specifically directed to this December 13, 2013 letter. However, on January 14, 2014, Defendant sent an "update" letter to Plaintiff, notifying her that Defendant had elected to take the allowed additional 60 days (beyond the original 60 days from the date of the appeal) in which to make a final decision. AR0050 (Docket No. 20 at 50). The January 14 correspondence further stated that Defendant was still in the process of completing its review. *Id*.

On January 16, 2014, Defendant notified Plaintiff that it would be submitting the claim for review by an independent physician. AR0155 (Docket No. 20-1 at 55). By letter dated January 25, 2014, Defendant requested specific additional information—incident photographs, autopsy photographs and any information regarding testing of the gun—from Plaintiff. AR0159 (Docket No. 20-1 at 59).[5] This same letter notified Plaintiff that it was tolling "the statutory time frames for reaching an appeal determination" until receipt of the requested information. *Id*.

Following this letter, the requested information was provided beginning on January 27, 2014, with the last information provided on February 24, 2014, and received by Defendant on February 28, 2014. AR0651 through AR0673 (Docket No. 20-9 at 1-23) and AR0764 (Docket No. 20-11 at 14). On March 21, 2014, Defendant notified Plaintiff that its review of the denial of benefits was complete and of its determination that its original decision to deny benefits was appropriate. AR0054 (Docket No. 20 at 54) and AR0775 (Docket No. 20-11 at 25).

Plaintiff alleges that Defendant failed to reasonably and properly review all relevant information. Specifically, Plaintiff asserts that Defendant was aware of Plaintiff's ongoing investigation and stated intent to submit additional information, but arbitrarily closed the appeal before Plaintiff had submitted all of the additional information. The precise information that Plaintiff contends Defendant failed to consider are an amended OME report revising the cause of Mr. Carlson's death to "could not be determined" and a final investigative report with statements of witnesses with knowledge of the circumstances surrounding Mr. Carlson's death.

---

[5] This letter refers to previous communications, which appears to have been a conversation between the Appeals Specialist and Plaintiff's attorney, as referenced in an email on January 21, 2014, from the Appeals Specialist to the outside reviewer. AR0157 (Docket No. 20-1 at 57).

**Analysis**

In the ERISA context, the district court's review of the correctness of a benefits determination made by the administrator or fiduciary is ordinarily limited to the administrative record. *Perry v. Simplicity Engineering, a Div. of Lukens General Indus., Inc.*, 900 F.2d 963, 966 (6th Cir. 1990). However, the recognized exception to this rule is when the "evidence is offered in support of a procedural challenge to the administrator's decision, such as lack of due process afforded by the administrator or alleged bias on its part." *Wilkins v. Baptist Healthcare System, Inc.,* 150 F.3d 609, 619 (6th Cir. 1996). The extent to which allegations of procedural defects are enough to allow evidence outside the administrative record is, as noted by Judge Trauger, uncertain at best. *Kinsler v. Lincoln Nat. Life Ins. Co.*, 660 F.Supp.2d 830, 836 (M.D. Tenn. 2009) (alleged lack of due process or alleged bias are enough to establish that the evidence is relevant, and therefore discoverable).

The *Johnson v. Connecticut General Life Ins. Co.* case relied upon by Defendant adds little clarity to this question. In that case, the Sixth Circuit expressly declined to require a threshold evidentiary showing of bias as a prerequisite to application of the *Wilkins* exception. *Johnson v. Connecticut General Life Ins. Co.*, 324 Fed.Appx. 459, 2009 WL 928590 at *6 (6th Cir. 2009). The *Johnson* court did however intimate that something more than mere allegations may be required. *Id*.

Here, the gravamen of Plaintiff's action is that she notified Defendant of additional information, which it arbitrarily failed to take into account, and under the plain language of the ERISA claims procedures, that failure prevents a finding that Defendant provided Plaintiff with a reasonable opportunity for a full and fair review. *See* 29 C.F.R. § 2560.503-1(h)(2)(iv). Plaintiff also claims that Defendant deliberately disregarded this information so that it could close her claim

5

without payment of any benefits, which Plaintiff alleges was in bad faith and demonstrates bias. Plaintiff seeks to supplement the administrative record with the additional information she intended to submit to Defendant, but was precluded from doing so by Defendant's decision on her appeal. If *Johnson* requires a heightened showing of a colorable procedural challenge, it has been met in this case. Thus, on the limited issue of Plaintiff's request to supplement the administrative record, the Court finds the requested supplementation is appropriate.

Defendant argues that the OME's Amendment Report is irrelevant because it is not binding on Defendant. The Court disagrees as to relevancy.[6] The Court also disagrees with Defendant's additional argument that the witness statements with which Plaintiff seeks to supplement the administrative record are new information. On November 21, 2013, Plaintiff's attorney sent a letter to the Appeals Specialist responsible for Plaintiff's claim that Plaintiff was in the process of obtaining witness statements and other reports. AR0142 (Docket No. 20-1 at 42). On December 13, 2013, Plaintiff again referred to witness interviews and statements. AR0143-44 (Docket No. 20-1 at 43-44).

For purposes of supplementation of the record, Plaintiff has offered enough to support her procedural challenges. Whether or not Plaintiff can prevail on the merits of her claims is a determination left for another day.

### Conclusion

Plaintiff has made a sufficient showing for the Court to consider the offered evidence. Plaintiff shall therefore be permitted to supplement the administrative record. Within thirty (30) days of the date of this Order, Plaintiff shall supplement the administrative record in this

---

[6] To be clear, the Court simply finds that the supplemental information is offered in support of Plaintiff's colorable procedural claims, and is relevant for that purpose.

proceeding with (i) the OME Amendment Report and (ii) the final investigative report prepared on behalf of Plaintiff, including witness statements.

Any party objecting to this decision may file a motion for review by the District Judge in accordance with Fed.R.Civ.P.72(a) and Local Rule 72.02(b). The motion for review shall be served and filed in accordance with Rules 5 and 7 of the Fed.R.Civ.P. and applicable local rules. The motion for review shall be filed within fourteen (14) days after entry of this Memorandum and Order. The motion for review shall state with particularity that portion of this Memorandum and Order for which review is sought and shall be accompanied by sufficient documentation to apprise the District Judge of the basis for the appeal. Any other party wishing to respond shall file a response within fourteen (14) days after served with a copy of the motion for review.

It is SO ORDERED.


BARBARA D. HOLMES
United States Magistrate Judge