IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION
CASE NO. 3:15-CV-0200

CHRISTINE A. CARLSON                                                      PLAINTIFF

v.

RELIANCE STANDARD LIFE INSURANCE COMPANY                          DEFENDANT

## REPORT AND RECOMMENDATION

Currently pending are cross motions for judgment on the record filed, respectively, by

Defendant Reliance Standard Life Insurance Company ("Defendant" or "Reliance") and Plaintiff

Christine A. Carlson ("Plaintiff" or "Claimant"). (Docket Entry, hereinafter "DE" Nos. 42 and

44). Plaintiff has filed a response in opposition to Defendant's motion (DE 49), to which

Defendant has filed a subsequent reply. (DE 50). Defendant has also filed a response in

opposition to Plaintiff's motion. (DE 47). Both motions have been referred to Magistrate Judge

Lanny King for report and recommendation. (June 22, 2017, Docket Annotation).

For the reasons that follow, the undersigned Magistrate Judge respectfully recommends

that Defendant's motion (DE 42) be DENIED and that Plaintiff's motion (DE 44) be GRANTED

IN PART, to the extent that the claim is remanded to the Plan Administrator to perform a review

of the entire Administrative Record including the Supplemental Information.

## I.  BACKGROUND

This matter involves Plaintiff's claim, as the widow of Barak J. Carlson (the "Decedent"),

who was a participant within the meaning of 29 U.S.C. §1002(7), of a group life insurance plan

(the "Plan") that was issued by the Defendant.

On December 28, 2010, Decedent applied for a life insurance policy listing the Plaintiff as the sole beneficiary. (Administrative Record, hereinafter "AR" 79).    The Decedent had a double-indemnity policy to which Plaintiff was the sole beneficiary through the Plan.  The life insurance was effective on December 28, 2010,  in the principal amount of $250,000.00 (the "Life Provision") and an accidental death policy (the "Accidental Death Provision") (together the "Policy") provided an additional $250,000.000 in the event of an accidental death.  (AR 79-80).  The Life Provision contains a limitation precluding the payment of benefits if the insured dies by suicide within two years of the effective date of insurance coverage.  (AR 484).  The Accidental Death Provision also excluded coverage when a loss is "caused by suicide, or intentionally self-inflicted injuries."  (AR 103).

 On October 20, 2012, the Decedent, armed with a shotgun, was turkey hunting with his brother-in-law, Timothy Cox ("Mr. Cox"). (AR 29).  The two men were hunting separately but in close proximity to each other; the Decedent in a small tent-blind alone and Mr. Cox hunting nearby.  (AR 112).  Shortly after 5:00 p.m. Mr. Cox heard a gunshot and attempted to text the Decedent to determine if he had shot a turkey.  (AR 112).  A short time later, Mr. Cox having received no response from Decedent, went to the blind and discovered the body of the Decedent with a gunshot wound on the left side of his neck.  (AR 112).

On the initial investigative report of the Police Department (the "Incident Report") and the subsequent report of the Office of the Medical Examiner ("OME") (the "Initial OME Report"), the Decedent's cause of death was listed as suicide.  (AR 114-15).

On August 8, 2013, in a letter to Plaintiff, Defendant denied Plaintiff's claims under the Policies based on the findings that the OME listed suicide as the cause of Decedent's death on the death certificate (the "Claim Denial Letter"). (AR 105).

On October 1, 2013, Plaintiff timely filed an appeal of the denial of benefits (the "Appeal"). (AR 109). In her Appeal Plaintiff supplied Defendant with a copy of the police report and investigative report pertaining to the Incident and a copy of the medical examiner's report including a toxicology report. *Id.* Plaintiff also notified Defendant that she was in the process of undertaking an investigation of the Incident and believed that the Incident was not the result of suicide, but an accident. *Id.*

On October 8, 2013, Defendant notified Plaintiff via letter that it was in receipt of her Appeal (the "Initial Review Notice") and that Defendant would be conducting a review (the "Appeal Review") of the claim file. (AR 46). The Initial Review Notice also informed Plaintiff that Defendant would notify Plaintiff if Defendant required additional information to make its appeal determination. *Id.* The Initial Review Notice also stated that Defendant would "toll the relevant time frames for reaching an appeal determination from the time of [its] request for additional information until such time as [it] receive[d] the requested information [from Plaintiff]" (the "Tolling Notice"). *Id.*

On October 23, 2013, Defendant sent a letter notifying Plaintiff that Defendant was granting Plaintiff until November 22, 2013 to supply Defendant with "any additional information" that Plaintiff wished to be considered in the Appeal Review of the file. (AR 48). In the October 23, 2013 letter, Defendant granted itself a tolling of the initial 60-day review period by stating: "the statutory [sic] time frames for reaching an appeal determination will be

tolled until such time as we receive the requested information from you." *Id.* The letter, however, did not request any specific information from Plaintiff. *Id.*

On November 21, 2013, Plaintiff sent a letter to Defendant requesting additional time to supply Defendant with the following information: witness statements and a crime scene expert's report. (AR 141). On November 22, 2013, Defendant sent another letter stating it was in receipt of Plaintiff's November 21, 2013 letter and was granting Plaintiff through December 13, 2013 to supply any information Plaintiff wished to be considered by Defendant in its Appeal Review. (AR 49). Defendant again repeated the same tolling language used in its October 23, 2013 letter and stated that the 21 day additional time for submission was required because "statutory and internal guidelines set strict deadlines for completion of an appeal review." (AR 49). Again, Defendant's November 22, 2013 letter did not request any specific information from Plaintiff. *Id.*

On December 13, 2013 counsel for Plaintiff wrote to Defendant and attached a copy of Detective Johnny Lawrence's investigation report. (AR 541-42). The December 13, 2013 letter also notified Defendant that Dr. Zimmerman, the medical examiner from Davidson County who performed the initial medical evaluation of the Decedent, was reopening the case and reviewing his findings based on the information contained in Jonny Lawrence's investigation report. *Id.* In addition to the notification that Dr. Zimmerman was in the process of performing a file review after having reopened the case, Plaintiff listed "additional facts" that Plaintiff wished to be considered by Defendant in its Appeal Review, indicated that Plaintiff was still investigating the claim, and that Plaintiff expected her investigation to be complete by mid-January 2014. *Id.*

On January 14, 2014 Defendant wrote to counsel for Plaintiff providing Plaintiff an "update regarding your client's claim" and formally notifying Plaintiff that "this letter serves as notice of our intention to take beyond 60 days to make a final decision on the appeal." (AR 0050). Defendant's letter stated that "[w]e are required to make a decision within 60 days of the date of the appeal but are allowed an additional 60 days if circumstances do not permit us to make a decision within the initial 60 day time frame" (the "Extension Notice"). *Id.* Defendant's Extension Notice did not request any additional information from Plaintiff nor did it indicate a time when it anticipated a decision would be rendered, instead stating "we will be contacting you in the near future with an update or to inform you if additional information will be required." *Id.* The Extension Notice letter also did not repeat the Tolling Notice language that was found in its prior notices nor did it otherwise inform Plaintiff that it was properly able to toll the Extension Period while waiting for Plaintiff to submit any additional documentation.

On January 16, 2014 Defendant notified Plaintiff that it would be submitting the claim for review by an independent examiner. (AR 0155). On January 25, 2014, Defendant wrote to counsel for Plaintiff reminding Plaintiff of the "strict deadlines for completion of an appeal review," and requested that Plaintiff provide: incident photographs, autopsy photographs, and any information regarding the testing of the gun. (AR 0159). The January 25, 2014 letter also notified Plaintiff that it was tolling "the statutory time frames for reaching an appeal determination" until receipt of the requested information. *Id.*

On January 27, 2014, Plaintiff provided some of the information requested in the January 25, 2014 letter and provided the autopsy photographs on February 24, 2014. (AR 651-74).

On March 11, 2014, the OME of Davidson County completed his review and amended his report (the "Amended OME Report") to change the manner of death from "suicide" to a finding that "the manner of death in this case could not be determined." (DE 29, ex. 1).

On March 21, 2014, Defendant notified Plaintiff that its review was complete and the denial of benefits was being upheld (the "Appeal Denial"). (AR 0775). It is uncontested that Defendant did not consider the Amended OME Report prior to issuing its Appeal Denial. *Id.*

On March 31, 2014, the OME certified its Amended OME Report. (DE 29, ex. 1). Also on March 31, 2014, counsel for Plaintiff was notified of the certification of the Amended OME Report and obtained a certified copy. (*Id.* at 3).

Plaintiff timely filed suit against Defendant in the Circuit Court for Davidson County, Tennessee, which was later removed to this Court on or about February 3, 2015, claiming (among other claims) that Defendant breached its contract by failing to pay benefits under the Policy. (DE #1).

On November 3, 2015, Plaintiff filed a Motion to Supplement the Administrative Record (DE #29) requesting that Plaintiff be allowed to supplement the administrative record to include the Amended OME Report and to allow Plaintiff additional time to provide relevant witness statements "necessary to complete a proper investigation and review of this matter." (DE #29 at 3). Plaintiff's Motion to Supplement was granted, and Plaintiff supplemented the Administrative Record with the Amended OME Report and a Final Investigation Report of Agente, LLC (the "Final Investigation Report"), which included witness statements (DE Nos. 38-1 and 38-2) (together the "Supplemental Information").

On November 1, 2016, a Magistrate Judge issued a Memorandum of Opinion allowing Plaintiff to Supplement the Administrative Record with the Supplemental Information, which was upheld by the District Court. (DE 39).

## II. ANALYSIS

The core issue in this action is whether Defendant conducted a full and fair review of Plaintiff's claim regarding the death of Decedent without considering the Supplemental Information submitted by Plaintiff. (DE 39 at 2). Pursuant to the Court's prior order, if the Defendant violated ERISA procedures when making its Appeal Determination without considering the Supplemental Information, then the claim should be remanded to the administrator to consider the supplemental evidence. (*Id.*)

### A. Standard of Review

A participant or beneficiary of an ERISA plan may bring suit in federal district court to recover benefits allegedly due under the terms of the plan. *Univ. Hosps. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 845 (6th Cir. 2000) (referencing 29 U.S.C. § 1132(a)(1)(B)). A plan fiduciary's denial of a claim for ERISA benefits is reviewed de novo "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *see also Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 380 (6th Cir. 1996). If the plan gives discretion to the administrator or fiduciary, then the benefit denial is reviewed under an "arbitrary and capricious" standard. *Id.* Here, Plaintiff conceded the administrator has discretion in this case and agreed with the Defendant that the arbitrary and capricious standard of review applies to the instant matter. (DE 45 at 5).

The issue in this case, however, is not whether the language in Defendant's plan gives it discretionary authority, but whether Defendant loses any discretion that it may have had because of its alleged *procedural* failure to exercise its discretion in accordance with the ERISA statute and regulations. *See Id.* (arguing that Defendant procedurally failed to conduct a full and fair evaluation of the claim); (DE #39 at 2-3) (ordering the undersigned Magistrate Judge to make a determination as to whether Defendant procedurally failed to provide Plaintiff with a full and fair review as required under ERISA). As such, this Court must apply the standard of review used by the courts when determining if the *procedure* employed by the fiduciary in denying the claim meets ERISA's procedural regulations.

ERISA was enacted by Congress to establish procedural safeguards to ensure that fiduciaries such as Defendant administer benefit plans "solely in the interest of the participants and beneficiaries." 29 U.S.C. §§ 1104(a)(1) and 1001(b). Under ERISA, the Secretary of Labor is given authority by Congress to enact regulations and set deadlines for the administration of employee benefit claims. 29 U.S.C. §§ 1133 and 1135. Those rules and regulations are codified in 29 C.F.R. § 2560.503–1, titled "Claims procedure" (the "Procedural Regulations") stating that every employee benefit plan shall "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. §§ 1133 and 1135.

A benefits determination on appeal must be made within a certain time. 29 C.F.R. § 2560.503–1(i)(4). Failure to follow these procedures is governed by 29 C.F.R. §§ 2560.503–1(l), which states:

(1) Failure to establish and follow reasonable claims procedures.

> In the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.

The Department of Labor's notice of final regulation for the most current version of § 2560.503-1(l) was intended "to clarify that the procedural minimums of the regulation are essential to procedural fairness and that a decision made in the absence of the mandated procedural protections should not be entitled to any judicial deference." *See ERISA Claims Procedure*, 65 Fed. Reg. 70246 (Nov. 21, 2000).

The Sixth Circuit has determined that a court reviews *de novo* "the question of whether the *procedure* employed by the fiduciary in denying the claim meets the [Procedural Regulations found in] Section [503]." *Marks v. Newcourt Credit Grp., Inc.*, 342 F.3d 444, 459 (6th Cir. 2003) (*quoting Kent v. United of Omaha Life Ins. Co.,* 96 F.3d 803, 806 (6th Cir.1996) (emphasis added)). In a *de novo* review, the plan administrators need only substantially comply with ERISA notice requirements in order to be compliant in the Sixth Circuit. *Kent,* 96 F.3d at 807–08. To decide whether there is substantial compliance reviewing courts must consider all communications between an administrator and plan participant to determine whether the information provided sufficiently complied with procedural requirements under the circumstances. *Marks*, 342 F.3d at 460.

As the Court ordered the undersigned Magistrate Judge to make a determination as to whether Defendant procedurally provided Plaintiff with a full and fair review as required under ERISA (DE #39 at 2-3), this Court shall review the claims review procedure utilized by Defendant *de novo*.

## B. Conclusions of Law

### 1. *Plaintiff Did Not Receive a Full and Fair Review Under 29 C.F.R. § 2560.503–1(h)(2).*

In accordance with the regulations, every employee benefit plan shall "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim. 29 U.S.C.A. § 1133. A "full and fair review" of an appeal of an adverse benefits determination is mandated by 29 C.F.R. § 2560.503–1(h)(2) after an employee receives an adverse benefit determination.

Courts have explained that a "full and fair review must be construed not only to allow a plan's trustees to operate claims procedures without the formality or limitations of adversarial proceedings but also to protect a plan participant from arbitrary or unprincipled decision-making." *Weaver v. Phoenix Home Life Mut. Ins. Co.*, 990 F.2d 154, 157 (4th Cir. 1993). As such, when alleging that a full and fair review of a claim was not provided, a plaintiff must allege how such a violation has prejudiced the presentation of her case. *Bartling v. Fruehauf,* 29 F.3d 1062, 1068 (6th Cir.1994) (explaining that courts may consider whether a plaintiff has been prejudiced in determining whether penalties for such violations are warranted). Ultimately, a plaintiff must be in a "worse position" because of a defendant's procedural violations than it would have been if defendant had complied with the regulations. *Id.* at 1067.

### a. <u>The Defendant failed to follow procedural requirements as set forth in 29 C.F.R. § 2560.503-1(i) and arbitrarily applied deadline and tolling rules.</u>

Plaintiff argues that Defendant did not conduct a full and fair evaluation of her claim as required by 29 C.F.R. § 2560.503-1(h)(2)(iv) because Defendant "failed to await the [Amended OME Report]" before closing its case "rapidly," and issuing a final determination on its own "arbitrary timeline." (DE 45 at 5; *see also* DE 49 at 1). Defendant, on the other hand, argues

that Plaintiff received a "full and fair review" and cites its alleged compliance with ERISA notice and timing regulations as evidence of its fairness to Plaintiff as well as its consideration of the additional documentation Plaintiff supplied during its Appeal Review. (DE #47 at 3-4). The Court agrees with Plaintiff.

To decide whether there is substantial compliance with procedural regulations, a reviewing court must consider all communications between an administrator and plan participant to determine whether the information provided sufficiently complied with procedural requirements under the circumstances. *Marks v. Newcourt Credit Grp., Inc.*, 342 F.3d 444, 460 (6th Cir. 2003). Here, Defendant did not come close to substantially complying with ERISA's notice, timing, and tolling requirements when considering Plaintiff's Appeal. In its correspondence to Plaintiff during the Appeal, and in its representations to the court, Defendant has been thoroughly inconsistent and incorrect in its calculation methods for tolling and for the first and second 60-day periods for notice and review set forth in 29 C.F.R. § 2560.503-1(i).

Defendant's calculations of the notice and timing requirements are rife with errors that run contrary to the plain language of the regulations, as are its arbitrary applications of the tolling allowance found in § 2560.503- 1(i)(4). Rather than attempt to address every single inconsistency and error in Defendant's various calculations, the court will simply set forth the proper method for calculation and, where particularly relevant, mention select calculation errors.

The ERISA claims regulations govern the claims procedures generally including the timing of appeals and the timing of notification of benefit determination on review (the "Regulation"). 29 C.F.R. § 2560.503-1. In the instant matter, sections 2560.503-1(i)(1) and (4) of the Regulation specifically govern both the timing of notifications made by plan

administrators and the information which must be included in those notices. The Sixth Circuit

has stated that one of the purposes of the timing regulations was to protect claimants from

administrators who failed to comply with claimants' requests for information, *see Bartling v.

Fruehauf Corp.*, 29 F.3d 1062, 1068 (6th Cir. 1994), not to provide plan administrators with a

shield from claimants who wished to supplement their files.

Pursuant to the Regulation, a claimant has 60 days to file an appeal after notification of

an adverse benefit determination. 29 C.F.R. § 2560.503-1(h)(2)(ii). Once an appeal is timely

filed, a plan administrator has no longer than 60 days to make a determination (the "Initial

Review"). Once the Initial Review is complete, the plan administrator must notify the claimant

of the plan's benefit determination or indicate its intent to extend its review up to an additional

60 days (the "Extension Period"). 29 C.F.R. § 2560.503-(i)(1)(i). The Extension Period can be

tolled under very specific circumstances by 29 C.F.R. § 2560.503-1(h)(4) (the "Tolling

Regulation"), which states:

> In the event that a period of time is extended as permitted pursuant to paragraph…due to
> a claimant's failure to submit information necessary to decide a claim, the period for
> making the benefit determination on review shall be tolled from the date on which the
> notification of the extension is sent to the claimant until the date on which the claimant
> responds to the request for additional information.

Where, during its Initial Review, the plan administrator determines that an extension of

time is required to process the determination; a written notice of an extension (the "Extension

Notice") must be furnished to the claimant *prior to the termination* of the 60-day Initial Review

period. Section 2560.503-(i)(1)(i) (emphasis added). The Extension Notice must state the

special circumstances requiring the extension of time, if any additional information is being

sought from the Plaintiff, and the date by which the plan expects to render the determination on review. *Id.*

The Extension Notice is only valid if: 1) The Extension Notice is in writing and sent within the 60-day Initial Review period; 2) the decision to invoke the Extension Period was based on plaintiff failing to submit information necessary to decide his claim; 3) Defendant detailed a specific request for additional information in the Extension Notice; and 4) Defendant indicated the date by which it expected to render its determination on review upon receipt of the requested information from a plaintiff. *Gay v. Nat'l Rural Elec. Coop. Ass'n Grp. Benefits Program*, No. 2:14-CV-253, 2014 WL 5475284, at *4 (S.D. Ohio Oct. 29, 2014). Courts have found that where a plan administrator's extension notice letter does not comply with Subsection 503-1(i)(1)(i)'s requirement that a plan indicate "the date by which [it] expects to render the determination on review," it does not qualify as a valid "extension notice" under the regulation. *See e.g. McFarlane v. First Unum Life Ins. Co.*, No. 16-CV-7806 (RA), 2017 WL 3495394, at *3 (S.D.N.Y. Aug. 15, 2017).

As such, in the case that a Defendant had issued proper notice of the 60-day extension *within the initial 60 day review period*, the 60–day Extension Period would be tolled from the date on which the Extension Notice is sent to the claimant through the date on which the claimant responds to the request for additional information. *See Gay v. Nat'l Rural Elec. Coop. Ass'n Grp. Benefits Program*, No. 2:14-CV-253, 2014 WL 5475284, at *4 (S.D. Ohio Oct. 29, 2014) (emphasis in original) (discussing 29 C .F.R. § 2560.503–1(i)(4)). The Tolling Provision only applies to the Extension Period and is wholly inapplicable to the 60-day Initial Review. **29 C.F.R. § 2560.503-1(h)(4) (stating** "the period for making the benefit determination on review

shall be tolled from the date on which the notification of the extension is sent to the claimant");

se*e e.g. Stevens v. Sun Life & Health Ins. Co. (U.S.)*, No. 3:16-CV-76-WKW, 2017 WL 900005,

at *11 (M.D. Ala. Mar. 7, 2017).

The Regulations are so stringent regarding a plan administrator's failure to follow the

appeal timing requirements, that based on Defendant's failure to comply with the initial 60-day

notice requirement alone, pursuant to 2560.503-(l)(1), "a claimant shall be deemed to have

exhausted the administrative remedies available under the plan and shall be entitled to pursue

any available remedies under section 502(a) of the Act on the basis that the plan has failed to

provide a reasonable claims procedure that would yield a decision on the merits of the claim."

> **i.    Defendant failed to substantially comply with the Procedural Regulations.**

Defendant argues that it complied with the Procedural Regulations when making its

Appeal Determination and attempts to place the blame on Plaintiff for failing to keep Defendant

updated during its Initial Review. (DE 47 at 3) (stating that "[i]f any blame needs to be ascribed,

it rests squarely on Plaintiff for not communicating with [Defendant]").  It is clear from the

language of the regulations at issue, however, that the responsibility to control the timing of the

Appeal Review process rests squarely with Defendant.   Based on several letters sent to Plaintiff

during the Initial Review Period, it is clear that Defendant was arbitrarily and incorrectly

applying the tolling provision found in 29 C.F.R. § 2560.503-1(i)(4), as well as arbitrarily setting

dates for which Plaintiff had to comply with requests for information from Defendant.  (AR 46,

48, and 49).  Defendant also issued notices for Plaintiff to provide select pieces of information

(gun testing, photographs from the scene and from the coroner) while ignoring other information

Plaintiff indicated she wanted considered during the review process. *See Id.* Defendant also issued other non-compliant notices to Plaintiff at random times during the Appeal process.

The only application of the Appeal timing and notice requirements that Defendant complied with was in its letter dated October 8, 2013, notifying Plaintiff that it had received Plaintiff's appeal and informed the Plaintiff that the "clock" started on Plaintiff's Appeal on October 1, 2013. (AR 46). Following the October 8, 2013, Initial Review Notice, and despite the Tolling Provision's inapplicability to the Initial Review Period, in its October 8, 2013, October 23, 2013, and November 22, 2013 letters to Plaintiff, (AR 46, 48, and 49), Defendant notified Plaintiff that it could toll the Initial Review Period while it awaited to receive the documents it requested from Plaintiff by including language in those letters that indicated it would be tolling "the statutory [sic] time frames for reaching an appeal determination…until such time as we receive the requested information from [Plaintiff]." *Id.*

Defendant's first improper and arbitrary mis-application of the regulations was in its October 23, 2013, letter to Plaintiff. (AR 48). The October 23, 2013 letter stated that Defendant was granting Plaintiff until November 22, 2013 to supply Defendant with "any additional information that Plaintiff wished to be considered" in Defendant's Appeal Review of the file and indicating it would be tolling "the statutory [sic] time frames for reaching an appeal determination…until such time as we receive the requested information from you." *Id.* (AR 48). The October 23, 2013 letter improperly and arbitrarily tolled the initial 60-day review period following its request for additional information and did not state why Plaintiff had only until November 22, 2013 to supply any additional information, nor did it state what information Defendant wished to review.

On November 21, 2013, Plaintiff, relying on Defendant's erroneous tolling of the limitations period, responded to Defendant's October 23, 2013 letter, requesting additional time to supply Defendant with witness statements and a crime scene expert's report. (AR 141).

Defendant's second improper and arbitrary mis-application of the regulations was in its November 22, 2013 letter to Plaintiff where Defendant stated it was in receipt of Plaintiff's November 21, 2013 letter and was granting Plaintiff an extension through December 13, 2013, to supply any information Plaintiff wished to be considered by Defendant in its Appeal Review. (AR 49). Defendant again repeated the same tolling language used in its October 23, 2013 letter, but added that the 21 day additional time for submission was required because "statutory and internal guidelines set strict deadlines for completion of an appeal review." (AR 49). As before, the November 22, 2013 letter did not state why Plaintiff had only until December 13, 2013 to supply any additional information, nor did it state what information Defendant wished to review.

On December 13, 2013, the deadline for submission of information set by Defendant, counsel for Plaintiff wrote to the Defendant requesting that Defendant consider additional information when performing its review, and attached a copy of Detective Johnny Lawrence's initial investigation report as requested (the "Initial Lawrence Report"). (AR 0541-0542). In its first Paragraph and indicative of its importance, the December 13, 2013 letter notifies Defendant that the medical examiner from Davidson County, who performed the initial medical evaluation of the Decedent, was reopening the case (the "OME Reopening") and reviewing his findings based on the information contained in Jonny Lawrence's investigation report. *Id.* The letter then stated that "in addition" to the OME Reopening, Plaintiff wanted "additional facts" to be

considered by Defendant in its Appeal Review, indicating that Plaintiff was still investigating the claim, and that Plaintiff expected its investigation to be complete by mid-January 2014. *Id.*

It is clear from the December 13, 2013 letter that Plaintiff considered the OME Reopening to be of utmost importance in the consideration of the claim and wished for that information to be considered by the Defendant. It is also clear from Plaintiff's reaction to the November 21, 2013 letter, that Plaintiff relied on Defendant's representations both that it could toll the statute while waiting for information from Plaintiff and that there was a regulatory basis for Defendant's deadline for submission of information. There is no evidence in the record, however, that Defendant ever mentioned the OME Reopening in any of its additional correspondence with Plaintiff or otherwise requested any additional information regarding the OME Reopening or requested a copy of any Amended OME Report that may have been issued.

Defendant's third improper and arbitrary mis-application of the regulations was in its January 14, 2014 letter to Plaintiff. (AR 50). After allegedly not having heard further from Plaintiff since the December 13, 2013 letter (DE 45 at 4), Defendant formally notified Plaintiff that it was extending the Appeal (the "Extension Notice"). (AR 50). Defendant's Extension Notice, however, was extremely untimely. Defendant did not give formal, written notice of its decision to utilize the additional 60-day period allowed by 29 C.F.R. § 2560.503–1(i)(1)(i) until 106 days after Plaintiff filed her Appeal and 46 days after the 60-day requirement.

Defendant's Extension Notice not only was late, but referenced unidentified regulations allowing it to take "an additional 60 days if circumstances do not permit us to make a decision within the initial 60 day time frame" without mention of the Tolling Regulation and not mentioning how the initial 60 day time frame was applicable 46 days after it had expired. As

previously discussed, the Tolling Regulation exists precisely to give the Defendant additional time to obtain information from Plaintiff and then continue its review once the information is received.  The Extension Notice also failed to state why the extension was being made, what information Defendant was waiting for from Plaintiff, or when Defendant anticipated issuing a decision on the claim as required by Section 2560.503-(i)(1)(i).  Instead the Extension Notice simply stated "we will be contacting you in the near future with an update or to inform you if additional information will be required," leaving Plaintiff with no idea what Defendant may or may not have been considering, if it intended to request any additional information from Plaintiff, or how long its Appeal Review would take after any missing information was received.[1]  *Id.*

Defendant failed to substantially comply with Procedural Regulations, only actually properly applying them in its initial correspondence with Plaintiff following her filing the Appeal.  (AR 109).  Defendant utilized the Tolling Regulations twice to improperly extend the Initial Review Period beyond 60 days, ignored the 60-day requirement to make an initial determination or extend the review period, and misled Plaintiff in multiple letters to believe that it was capable of giving the Plaintiff time to collect additional information during its initial review.  Defendant then went on to send a very delinquent and improper Extension Notice, which wholly failed to comply with the Procedural Regulations by not stating why the extension was being made, what information Defendant was waiting for from Plaintiff, or when Defendant

---

[1] Defendant now claims that it issued the Extension Notice because Plaintiff indicated in her December 13, 2013 letter that she anticipated her investigation would be completed mid-January 2014.  (DE #47 at 3-4).  What Defendant does not explain, nor did it state in its Extension Notice, is why, after having "waited" for Plaintiff to submit information and "having heard nothing" from Plaintiff, it needed any additional time.  *Id.*  If Defendant decided to extend the Review Period so that Plaintiff could submit the information she stated she wanted considered in her December 13, 2017 letter (including information relating to the OME Reopening), why did Defendant not list that information and use the Tolling Regulation to stop the 60-day Extension Period until Plaintiff was able to obtain that information?

anticipated issuing a decision on the claim. Defendant arbitrarily closed the file without waiting for or requesting any information about the OME Reopening even though it was on notice that the OME was taking a second look at the case.[2]

No deference is due Defendant's failure to comply with the regulation and the relevant terms of the plan documents because Defendant has no discretion to negate, ignore, or otherwise violate the plain requirements of the governing regulations. *See similarly, Stevens v. Sun Life & Health Ins. Co. (U.S.)*, No. 3:16-CV-76-WKW, 2017 WL 900005, at *13 (M.D. Ala. Mar. 7, 2017) (discussing the application of a de novo standard of review to a plan administrator's failure to properly apply notice and tolling requirements). However, even under a deferential arbitrary and capricious standard of review, Defendant's interpretation and application of the tolling provision in this matter is the very definition of "arbitrary and capricious." *See also, Id.* (stating that a plan administrator's failure to properly inform a claimant of the statutory requirements for determination of a claim and tolling of a claim determination along with failing to properly apply the procedural regulations was the "very definition of arbitrary and capricious" behavior).

> ## ii. Plaintiff was harmed by Defendant's arbitrary and improper use of the Procedural Regulations

While Defendant did not substantially comply with the regulations, Plaintiff must also establish Defendant's procedural violations prejudiced her ability to present her case on review in order for penalties to be assessed on a non-compliant defendant. *Bartling v. Fruehauf,* 29 F.3d 1062, 1068 (6th Cir.1994) (explaining that Courts may consider whether a plaintiff has been

---

[2] Had the Amended OME Report made an affirmative finding that the Decedent had not committed suicide, the Defendant would have no ground to argue, as it does here, that it did not need to consider those findings. (DE 47). As this Court is not tasked with determining IF the denial of Plaintiff's claim was improper, and instead is only to determine if Defendant procedurally failed to provide Plaintiff with a full and fair review because it did not consider the Supplemental Information when rendering its decision, the Court need not decide if the information contained in the Amended OME Report would have changed the outcome of Defendant's review.

prejudiced in determining whether penalties for such violations are warranted).   Here, Plaintiff

has been prejudiced by Defendant's refusal to toll the Extension Period until Plaintiff could

obtain the Supplemental Information now part of the administrative record.

Defendant argues that the burden fell on the Plaintiff to request additional time for

Defendant to review the Amended OME Report even though Plaintiff had previously notified the

Defendant that the OME Reopening had occurred and even though Defendant had arbitrarily

concluded its Appeal Review without attempting to ascertain if the Amended OME Report was

available.  (DE 45 at 4).  While this Court would agree that, if the Amended OME Report had

been available prior to Defendant is completing its Appeal Review, Plaintiff should have

supplied it, that is not the case here.

Defendant, being aware of an ongoing investigation into the cause of the Decedent's

death by the same entity which made an initial finding of "suicide" as the cause of death, and of

Plaintiff's request to consider the OME Investigation (AR 141), arbitrarily failed to request any

information from Plaintiff regarding that investigation or any resulting reports.  While this Court

is not willing to go so far as to agree with Plaintiff that Defendant knew the Amended OME

Report was forthcoming and hastily closed its file (DE 45 at 5), it is clear that Defendant, after

being notified of an ongoing OME Investigation, failed to request information from the Plaintiff

regarding the OME Investigation.  The fact that Defendant was well within its rights to toll the

Extension Period via the Tolling Regulation to allow Plaintiff time to obtain additional

information regarding the OME Investigation or to otherwise request an Amended OME Report

when and if one was forthcoming, after Plaintiff had requested the Defendant to consider this

information, is at the very least a significant procedural error.

Instead, Defendant went out of its way to (improperly) toll the Initial Review period to obtain select information from Plaintiff and to thereafter perform an independent review without any additional information from the OME Reopening. The fact that Defendant failed to ever formally request any information regarding the OME Investigation or subsequent Amended OME Report and instead cherry-picked information it wished to review seems erroneous at best and purposeful at worst. Again, as the Plaintiff did not have the ability to toll the Extension Period on its own, Plaintiff was at the mercy of the Defendant to both formally request any information relating to the OME Investigation, as Plaintiff had requested in its December 13, 2013 letter, and toll the Extension Period until Plaintiff could obtain that information. Defendant did neither.

Defendant failed: 1) to substantially comply with the Procedural Regulations; 2) arbitrarily and capriciously issued notices to Plaintiff setting incorrect and improper deadlines to supply information; 3) applied the Tolling Provision incorrectly and seemingly randomly; 4) ignored Plaintiff's request to consider any evidence arising from the OME Investigation; 5) resulting in Plaintiff's claim being reviewed without potentially relevant information that Defendant knew about and failed to obtain. Therefore, even under a more deferential arbitrary and capricious standard nevertheless a *de novo* review, Defendant acted arbitrarily and capriciously and failed to fully and fairly review Plaintiff's claim which resulted in the Supplemental Information being excluded from review.

**b. The Defendant arbitrarily decided which information to review.**

Pursuant to 29 C.F.R. § 2560.503-1(h)(2)(ii), Plaintiff has the right, during the course of her administrative appeal, to submit written comments, documents, records, and *other*

*information*. (emphasis added).   A claimant is afforded such an opportunity if the claims

administrator: (1) does not control the administrative record, meaning the claimant could have

submitted evidence in support of the claim, and (2) clearly informs the participant of his or her

right to submit additional evidence.  *See Fendler v. CAN Group Life Assur. Co.*, 247 Fed.Appx.

754, 758 (6th Cir. 2007). If a claimant had the opportunity to submit additional evidence, but

chose not to do so, it is improper for the court to allow supplementation of the administrative

record.  *Id.*  Moreover, a claimant's failure to fully explore and exercise her procedural rights

does not undermine the fundamental fairness of an otherwise full and fair administrative review

process.  *Balmert v. Reliance Standard Life Ins. Co.*, 601 F.3d 497, 502 (6th Cir. 2010).

Most cases addressing § 2560.503-1(h)(2)(ii) focus on a plaintiff's request (or lack

thereof) for information from the plan administrator and not cases where the a plaintiff has not

been given time to submit additional information that is not readily available after notifying the

administrator of its existence.  While the Sixth Circuit has not addressed the issue of whether a

plan administrator has a duty to wait for, request, or otherwise obtain information that a plaintiff

has made the administrator aware of, or if the plan administrator has a duty to delay its decision

until such information has been obtained, other courts have done so.   The Court in *Roberts*

found that: although claimants bear the burden to submit "the pertinent documents and

information necessary to facilitate a…determination, regulations promulgated by the Secretary of

Labor authorize, if not require, plan administrators working with an apparently deficient

administrative record to inform claimants of the deficiency and to provide them with an

opportunity to resolve the problem by furnishing the missing information."   *Roberts v. Anthem*

*Life Ins. Co.*, No. CV1600571BROGJSX, 2017 WL 2469354, at *5 (C.D. Cal. June 7, 2017)

(referencing *Montour v. Hartford Life & Acc. Ins. Co.*, 588 F.3d 623, 636 (9th Cir. 2009)) (citing 29 C.F.R. § 2560.503–1(f)(3)–(4), (g)(1)(iii)).

In a case analogous to the instant matter, the court in *Cheng v. Unum Life Ins. Co. of Am.*, 291 F. Supp. 2d 717, 721 (N.D. Ill. 2003), found that an appeal denial that was made before receiving any further submissions from claimant despite his indication in previous correspondence to the administrator that he would be submitting additional information upon its receipt from a third party source was arbitrary and capricious. The *Cheng* Court explained that the administrator's decision on appeal was "premature" given both the length of time the claimant had on appeal and the fact that he expressed intent to submit additional documentation regarding the appeal. The Court ultimately found that the claimant in *Cheng* did not receive a full and fair review. *Id.*

If there was any evidence that Defendant requested the Amended OME Report or the Updated Investigation Report from Plaintiff, and that Plaintiff failed to respond or otherwise supply the missing information, then a finding that Defendant committed a procedural error by failing to consider the Amended Report and Updated Investigation Report would not be possible. *See Roberts v. Anthem Life Ins. Co.*, No. CV1600571BROGJSX, 2017 WL 2469354, at *6 (C.D. Cal. June 7, 2017). If Defendant had not so vehemently relied on the "strict deadlines for completion of an appeal review" language it set forth in its final letter requesting information from Plaintiff before rendering its decision (AR 0159), and if Defendant had ever informed Plaintiff of a timeframe it anticipated completing its review in the Extension Notice or in its follow up letters requesting additional information, Plaintiff would have been able to communicate the expected timeframe for submission of the Supplemental Information or at least

23

keep Defendant informed of the OME's ongoing review until completion. Additionally, had Defendant wished to consider the Supplemental Information, it should have notified Plaintiff in the Extension Notice that it wished to review any documentation Plaintiff had regarding that information and toll the Extension Period accordingly.

Instead, Defendant never issued a formal request for either the Amended Report or the Updated Investigation Report, and argues that it was Plaintiff's duty to supply Defendant with information that Defendant never formally requested, in a timeframe that Plaintiff had no means to calculate. The fact that the OME's findings directly relate to the reason Plaintiff's claim was denied is absolutely relevant to making an informed determination regarding denying the claim. Simply put, the Defendant does not get to decide which information to review once a request is made by Plaintiff. Once the Defendant properly tolls the Extension Period, there is no penalty for it waiting until Plaintiff supplies it with the information Plaintiff wants reviewed.

As previously discussed, in her letter dated December 13, 2013 (AR 49), Plaintiff notified Defendant that the medical examiner had reopened its case to re-examine its initial cause of death determination and indicated it wanted that fact (as well as others) considered when Defendant performed its Appeal Review. Defendant went on to request various pieces of information, and notified Plaintiff it was tolling the Extension Period, but never again addressed in writing the OME's reopening of the case. In its response to Plaintiff's Motion, Defendant claims that it was unable to toll the Extension Period because "the period for making the benefit determination on review shall be tolled from the date on which the notification of the extension is sent to the claimant," indicating that because the Defendant did not mention in the Extension Notice that it wanted additional information regarding the OME Investigation, that it could not

later toll the Extension Period. (DE 47 at 5). However, this is precisely the duty that other courts have imparted on plan administrators – that they have a duty to inform claimants of any deficiency and to provide a plaintiff with an opportunity to resolve the problem by furnishing the missing information. *See e.g. Cheng*, 291 F. Supp. 2d 717; *Roberts v. Anthem Life Ins. Co.*, No. CV1600571BROGJSX, 2017 WL 2469354, at *5 (C.D. Cal. June 7, 2017).

According to Defendant, because Defendant never requested a new report from the Medical Examiner and never said it was extending the deadline until that information was received, that it was entitled to ignore Plaintiff's specific request to consider the OME Reopening. *Id.* By this logic, a Defendant could chose to ignore any request for consideration made by Plaintiff, even in light of the clear notification by Plaintiff, prior to the Extension Notice, of potentially relevant information which goes to the heart of the denial of her claim.

In this case, under a *de novo* or an arbitrary and capricious standard, the plan administrator erred when it closed the file without ever making a formal request for any information related to the OME Investigation or the Amended OME Report.

**c.** **The Defendant may have a duty to investigate.**

Plaintiff alleges that Defendant failed to undertake a "full and fair review" of Plaintiff's claim for benefits by failing to adequately investigate Plaintiff's claims and by failing to hold off on making a decision on Plaintiff's appeal until the Medical Examiner's supplemental report was available, which Plaintiff had requested Defendant consider and which Defendant knew was not yet available at the time it closed the file and rendered its Appeal Denial. DE 49 at 1. Plaintiff also contends that Defendant failed to investigate the evidence surrounding Decedent's death, and therefore its final determination was arbitrary and capricious.

Plaintiff points to a case from the Middle District of Georgia which states that Plan administrators owe a duty to investigate "matters essential to the denial of the insured's claim." *Acree v. Hagford Life & Accident Ins. Co.,* 917 F.Supp.2d 1296, 1302 (M.D. Ga. 2013) (citations omitted). The Sixth Circuit has previously noted that the key question, when determining if a plan administrator acted arbitrarily and capriciously in denying a claim, "is what constitutes the universe of information that [a plan administrator] should have considered." *Killian v. Healthsource Provident Administrators, Inc.*, 152 F.3d 514, 521 (6th Cir. 1998). However, the Sixth Circuit has not yet adopted a strict duty to investigate for Plan administrators: "[W]hile it is clear that plan administrators owe fiduciary duties to beneficiaries, whether that duty encompasses a duty to reasonably investigate remains unclear. It is even less clear what the parameters of such a duty would entail should one exist." *McAlister v. Liberty Life Assur. Co. of Boston,* 647 F. App'x 539, 549 (6th Cir. 2016) (citations omitted).

As the case is being recommended to be remanded back to the plan administrator for failure to provide a full and fair review, including review of the Supplemental Materials, the Court need not address the issue of whether the plan administrator has a duty to investigate.

### d. **The presumption against suicide may apply.**

Defendant argues that the presumption against suicide does not apply in this case, or that if it applies, Defendant has presented enough evidence to rebut it. (DE 43 at 8). Plaintiff cites again to *Acree,* which notes that the Eleventh Circuit has adopted the federal common law presumption against suicide, and argues that Defendant failed to apply it when considering the record without the Supplemental Information. *Acree,* 917 F.Supp.2d at 1311. While the

presumption against suicide may or may not affect the outcome of the case, the Sixth Circuit has not spoken as to whether the legal presumption against suicide applies in ERISA cases.

As the case is being recommended to be remanded back to the plan administrator for failure to provide a full and fair review, including review of the Supplemental Materials, the Court need not address the issue of whether the presumption against suicide applies in the instant matter, or if Defendant successfully rebutted any potential presumption.

      **e.**   **The Defendant failed to give a reasoned explanation for denial.**

Plaintiff finally contends that Defendant's final appeal decision was arbitrary and capricious because Defendant fails to offer a reasoned explanation. DE 45 at 7. Defendant offers the medical examiner's report and death certificate which both list the cause of death as suicide. AR 72, 114. Further, Defendant's independent examiner concluded that "the overall investigation of the scene, including the decedent's position, the position of the gun, and the range and direction of fire of the gunshot wound are all consistent with a suicide. The shotgun wound in this case was the result of an intentional act and not an accident." AR 434.

As the case is being recommended to be remanded back to the plan administrator for failure to provide a full and fair review, including review of the Supplemental Materials which were not previously reviewed, the Court finds that Defendant could not have provided a reasoned explanation for its denial that did not address the Supplemental Information.

      **2.**   ***The Case Should Be Remanded Back to the Plan Administrator.***

Having found that Defendant failed to provide a full and fair review of Plaintiff's claim, the Court "may either award benefits to the claimant or remand to the plan administrator." *Elliott v. Metro. Life Ins. Co.,* 473 F.3d 613, 621 (6th Cir.2006). Remand is appropriate in a variety of

circumstances, particularly where the plan administrator's decision suffers from a procedural defect or the administrative record is factually incomplete. For example, where the plan administrator fails to comply with ERISA's appeal-notice requirements in adjudicating a participant's claim, the proper remedy is to remand the case to the plan administrator "so that a 'full and fair review' can be accomplished." *Shelby Cty. Health Care Corp. v. Majestic Star Casino*, 581 F.3d 355, 373 (6th Cir. 2009) (citing *Gagliano v. Reliance Standard Life Ins. Co.,* 547 F.3d 230, 240 (4th Cir.2008)).

Where there is an issue "with the integrity of the plan's decision-making process, rather than that a claimant was denied benefits to which he was clearly entitled," remand to the plan administrator is the appropriate remedy. *Helfman v. GE Grp. Life Assur. Co.*, 573 F.3d 383, 396 (6th Cir. 2009) (internal quotations omitted).  Courts adopting this position have reasoned that a procedural violation does not warrant the substantive remedy of awarding benefits. *See Shelby*, 581 F.3d at 240.  Remand also is appropriate where the plan administrator merely "fail[ed] ... to explain adequately the grounds of [its] decision."  *Id.* (*citing Caldwell v. Life Ins. Co. of N. Am.,* 287 F.3d 1276, 1288 (10th Cir. 2002)). In addition to procedural irregularities, an incomplete factual record provides a basis to remand the case to the plan administrator. *E.g., Miller v. United Welfare Fund,* 72 F.3d 1066, 1073–74 (2d Cir.1995) (remanding after determining that "[t]he present record is incomplete").

Here, Defendant clearly violated the Procedural Regulations, rendering it difficult to impossible for Plaintiff to determine when or if certain information would be reviewed and the amount of time in which it had to submit such information.  The procedural errors made by Defendant resulted in Defendant both failing to consider potentially relevant information of

which it was aware existed and was outside of the control of the Plaintiff to deliver by a date certain and a premature closure of its file and denial of Plaintiff's Appeal. Those same procedural errors also resulted in Plaintiff having to rely on a confusing and unclear and ultimately improper and arbitrary timeline, controlled entirely by Defendant, where the only information reviewed by Defendant was the information Defendant decided to request regardless of whether Plaintiff wished any additional information to be considered. Due to the severe procedural errors in the management of the Appeal Review committed by Defendant, the Court finds that Plaintiff was denied a Full and Fair Review as mandated by 29 U.S.C. §§ 1133 and 1135 and 29 C.F.R. § 2560.503–1, and recommends that the claim be remanded to the Plan Administrator to perform a review of the entire Administrative Record including the Supplemental Information.

## RECOMMENDATION

Based on the foregoing, the Magistrate Judge respectfully recommends that:

(1)     Plaintiff's motion for judgment on the record (DE 44) is GRANTED IN PART and DENIED IN PART. Plaintiff's Motion is GRANTED to the extent that the case shall be remanded to the Plan Administrator to perform a review of the entire Administrative Record including the Supplemental Information. Plaintiff's Motion is DENIED to the extent that Plaintiff moved for an award of the full amount of the life insurance policy, including double-indemnity in the event of an accidental death, with interest and all litigation expenses, including an award of attorney's fees.

(2)     Defendant's motion for judgment on the record (DE 42) be DENIED.

Any party has fourteen (14) days from service of the Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen (14) days from service of any objections filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 47 U.S. 140 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004) (en banc).

Respectfully submitted,

c:      Counsel